UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLORIA NUÑEZ,<br><br>        Plaintiff,<br><br>    v.<br><br>PACIFIC GAS & ELECTRIC COMPANY RETIREMENT PLAN, et al.,<br><br>        Defendants. | Case No. 16-cv-07412-JST<br><br>**ORDER RE: MOTIONS FOR JUDGMENT UNDER RULE 52**<br><br>Re: ECF Nos. 55, 56 |

Before the Court are Plaintiff Gloria Nuñez's and Interpleader Defendant Adriana Vanessa Nuñez's motions for judgment under Federal Rule of Civil Procedure 52. ECF Nos. 55, 56. The Court will deny Gloria's motion and grant Vanessa's motion.

**I.    PROCEDURAL BACKGROUND**

Plaintiff Gloria Nuñez filed this action against Defendant Pacific Gas & Electric Company ("PG&E") Retirement Plan, seeking an award of survivor benefits under the Employment Retirement Income and Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). ECF No. 1. The Plan filed an interpleader complaint that joined Adriana Vanessa Nuñez ("Vanessa") as an interpleader defendant. ECF No. 27. Vanessa contends that she, rather than Gloria, should receive the survivor benefits in question. ECF No. 39 at 6. The Plan, Gloria, and Vanessa agree that "[t]he Plan is a mere stakeholder, and has no interest in the Survivor's Benefits, except to recover its attorneys' fees and costs from this action." ECF No. 32 at 3.

The Court granted the parties' stipulation to allow the Plan to deposit the survivor benefits with the Court and discharge the Plan "from any and all liability with respect to the payment of the Survivor's Benefits, except that the Plan must continue to deposit the monthly Survivor's Benefits with the Court as they become payable, and the Plan must pay the Survivor's Benefits under the

Plan pursuant to a final, nonappealable order of this Court." ECF No. 36 at 2. "Any amounts that remain deposited with the Court after payment by the Plan of the Survivor Benefits pursuant to a final, non-appealable order of this Court shall be promptly returned to the Plan." Id. To date, the Plan has deposited $37,757.06. ECF Nos. 57-59, 65.

Gloria and Vanessa have both filed motions for judgment under Federal Rule of Civil Procedure 52. Rule 52 provides that, "[i]n an action tried on the facts without a jury or with an advisory jury, the court must find the facts specially and state its conclusions of law separately."

## II. FINDINGS OF FACT

The parties agree on the following facts, ECF No. 32 at 2-3: Daniel Nuñez was employed by PG&E from October 30, 1989, until his death on October 12, 2015. He was a participant in Part II of the PG&E Retirement Plan. Under Section 11 of that Plan, his surviving spouse or beneficiary is entitled to receive a Pre-Retirement Survivor's Pension. Gloria, who was married to Daniel at the time of his death, and Vanessa, Daniel's daughter from a prior marriage, made competing claims for the survivor benefits. The Plan initially approved Gloria's claim for benefits and denied Vanessa's claim. Gloria and Vanessa appealed that decision to the Plan's Employee Benefit Appeals Committee ("EBAC"), which overturned the initial decision and awarded benefits to Vanessa rather than Gloria. If survivor benefits are awarded to Gloria, the starting monthly benefit is $1,716.23. If benefits are awarded to Vanessa, the starting monthly benefit is $1,604.68.

Section 17 of Part II of the Plan provides that:

> The COMPANY, acting through its Board of Directors or Executive Committee, reserves to itself the exclusive power to amend, suspend, or terminate the PLAN as provided below and to appoint and remove from time to time:
>
> (a) The individuals comprising the EMPLOYEE BENEFIT COMMITTEE;
>
> (b) The individuals comprising the EMPLOYEE BENEFIT APPEALS COMMITTEE;
>
> (c) The EMPLOYERS whose EMPLOYEES may participate in the PLAN.
>
> (d) Except as provided in Section 20, the appropriate committees established by the COMPANY shall serve as the final review committees, under the PLAN, to determine conclusively for all

2

> parties any and all questions arising from the administration of
> the PLAN and shall have sole and complete discretionary
> authority and control to manage the operation and administration
> of the PLAN, including, but not limited to, the determination of
> all questions relating to eligibility for participation and benefits,
> interpretation of all PLAN provisions, determination of the
> amount and kind of benefits payable to any PARTICIPANT,
> SPOUSE or BENEFICIARY, and construction of disputed or
> doubtful terms. Such decisions shall be conclusive and binding
> on all parties and not subject to further review.
>
> All powers and duties not reserved to the COMPANY are delegated
> to the EMPLOYEE BENEFIT COMMITTEE and to the
> EMPLOYEE BENEFIT APPEALS COMMITTEE. Action of either
> committee shall be by vote of a majority of the members of the
> committee at a meeting, or in writing without a meeting, and
> evidenced by the signature of any member who is so authorized by
> the committee. The COMPANY indemnifies each member of each
> committee against any personal liability or expense arising out of
> any action or inaction of the committee or of any member of the
> committee or of such individual, except that due to his own willful
> misconduct.

ECF No. 27-1 at 103.[1]

Section 11 provides for a Pre-Retirement Survivor's Pension. Id. at 97-100. The beneficiary of such a pension must be designated on forms provided by PG&E and filed with the plan administrator. Id. at 113. "If a PARTICIPANT is married and would like to designate a BENEFICIARY other than his or her SPOUSE for purposes of Section 11, the SPOUSE must consent to such designation by signing the designation form provided by the EMPLOYER with such signature witnessed and notarized." Id. If more than one form is submitted, "the most recent, properly submitted form will supersede all prior designations." Id.

Three separate notarized designation forms were submitted, all of which named Vanessa as the beneficiary. The August 28, 2015 form was ineffective because it was signed by Gloria but not by Daniel. ECF No. 27-2 at 222-24.[2] The August 29, 2015 form was signed by both Gloria and Daniel. Id. at 226-28. However, on September 1, 2015, Gloria sent to PG&E a signed and notarized letter, written in Spanish, stating that she does not read English, and that no one

---

[1] The EBAC's final decision refers to benefits under Section 12 of Part III of the Plan. ECF No. 55-4 at 4. The Court cites to Part II of the Plan based on the parties' agreement that Daniel was a participant under Part II. ECF No. 32 at 2.

[2] ECF No. 27-2 is the administrative record for Vanessa's appeal. ECF No. 27-3 is the administrative record for Gloria's appeal. Each is 563 pages, and they are nearly identical.

3

explained to her the contents of the form she signed on August 29. Id. at 232. She further explained that her intent in sending the letter was to revoke the designation form that she neither read nor understood. Id.

On September 9, 2015, a benefits administration analyst at PG&E sent Daniel a letter stating, "in light of Gloria Nunez Guerrero's revocation of her consent to waive [the survivor] benefit, PG&E cannot accept the Pre Retirement Beneficiary Form you submitted." Id. at 234. The letter instructed Daniel: "[I]f you submit a new form that designates someone other than Gloria as a beneficiary, you will need to submit satisfactory evidence to the plan that she has consented to waiving her benefit and that she understands the significance of what she is waiving." Id.

A third designation form was signed by both Daniel and Gloria on September 19, 2015. Id. at 238-40. This form was accompanied by a sworn statement, written in Spanish and signed by Gloria and notarized. Id. at 242. The accompanying English translation included the following paragraph:

> [B]y means of a competent translator I was read the contents of the document entitled Pacific Gas and Electric Company Retirement Plan Pre-Retirement Beneficiary Designation Form and in accordance with its content and with full knowledge of its legal implications for both for me and for my daughter Daniel and mine I signed such document under the condition that the written agreement between Adriana Vanessa Nunez and I be fulfilled. Said agreement is attached to this document.

Id. at 243. The attached agreement was also in Spanish. It was signed by both Gloria and Vanessa and notarized. Id. at 245. The accompanying English translation states four terms: (1) that Vanessa be named the beneficiary of the Plan's survivor benefits; (2) that Vanessa "will use the money received in the death of Daniel Nunez to pay all debts of her father and primarily including those which under the action of law spouse has any responsibility and funeral expenses"; (3) that funds remaining after paying these debts would be split between Daniel's daughters from his first marriage, including Vanessa, and Gloria; and (4) that "failure to fulfill this agreement is cause for [Gloria] to retract her consent and demand that she be the total and absolute beneficiary of the existing total amount in the retirement account." Id. at 246.

4

Following Daniel's death, both Gloria and Vanessa applied for survivor benefits under the Plan. Id. at 258, 298. The Plan administrator initially directed benefits to Gloria. Id. at 268. But after Vanessa wrote to the Plan administrator and submitted the September 19, 2015 beneficiary designation form, the Plan awarded benefits to Vanessa. Id. at 270-86, 292. Gloria's attorney wrote a letter stating that the "beneficiary form dated September 19, 2015, was presented to Ms. Gloria Nunez in a fraudulent manner that she did not truly consent to subject beneficiary redesignation," and the Plan again awarded benefits to Gloria. Id. at 305, 311. Vanessa objected to this determination in writing. Id. at 324-52. The Plan decided to apply the claims and appeals procedure to both Gloria's and Vanessa's claims. Id. at 378, 381.

As part of the Plan's review process, Gloria submitted a declaration, dated April 18, 2016, stating that Daniel did not sign the August 28, 2015 designation form because "he wanted me to be the beneficiary of his pension benefits." Id. at 403. Her declaration further states:

> On September 29, 2015, Adriana Vanessa told me that she had called immigration and they were coming to take me into custody. Vanessa said, "I do not know what will happen to your daughters, you are not going to see my dad again." She told me not to worry about Sofia [Gloria and Daniel's daughter] as she was going to take care of her. However, she said, "I can call immigration again to stop them from taking you only if you sign the documents." So I went with Vanessa to sign and then she told me not to worry. Also, she said that I couldn't get the pension benefits because I had no legal status in the United States. Before I signed the PG&E Retirement Plan Pre-Retirement Beneficiary Designation Form, the notary public (Raquel Vargas) told me that I had a choice to not sign if I didn't want to. But, I couldn't as Adriana was blackmailing me.

Id.

On May 31, 2016, the Plan issued a ruling in Gloria's favor, finding that Gloria "did not knowingly and willingly consent to the designation of Adriana as Daniel's beneficiary." Id. at 455. The reviewer gave weight to Gloria's declaration "that Adriana blackmailed her into signing the September Declaration by threatening to have her taken into custody by immigration officials." Id. He also noted in a footnote that, "[a]lthough not dispositive on the issue at hand," Gloria's September 19, 2015 sworn statement and the agreement between Gloria and Vanessa to split the survivor benefits "indicate that Gloria did not unequivocally forfeit her rights to all Plan benefits when she executed the September Designation." Id. at 455 n.1.

5

Vanessa appealed the Plan's decision to the EBAC. Id. at 463-97. She submitted a declaration, dated July 26, 2016, stating that:

> [Daniel] met with lawyers to prepare his estate plan. He completed forms necessary to confirm his life insurance beneficiaries, executed powers of attorney and on August 28, 2015 he executed his revocable living trust. A major consideration in his estate plan was to ensure that his PG&E death benefits would be shared among my sisters and his new wife. He could not name his trust as the beneficiary, therefore, he designated me as the beneficiary with the promise that I would distribute the money equally between my three sisters and his wife.

Id. at 463. She further declared that, after PG&E notified Daniel that Gloria withdrew her consent on the August 29, 2015 designation form:

> This triggered multiple conversations between my father and Gloria in the house which I overheard. My father told Gloria what he wanted, that he wanted to provide for all of his daughters and she would not be left out and that he had provided for her elsewhere in his estate plan. There were multiple discussions, some arguments and agreements were reached that I would be the named beneficiary, but that I agreed to make certain to distribute the pension to the family.

Id. at 464. Regarding the events of September 19, 2015, Vanessa declared:

> I heard my father and Gloria discussing the pension benefit and his request that she sign a new form in front of a notary. They discussed the terms of the agreement that was later put in writing. My father had bad car sickness so I drove with Gloria to the notary public in Daly City and executed the beneficiary designation form. The notary sat with us and prepared a written translation of the meeting in Spanish which Gloria signed, and the notary notarized Gloria's signature on that translation. The agreement that Gloria reached with my father, and which was put into writing was that the pension would be split two ways: One for me and my two sisters who are minors, and the other half for Gloria and her daughter with my father, who is just a baby. Gloria negotiated with us that if I did not comply by paying my father's debts and funeral expenses first from the pension, that she would be able to cancel the agreement. We agreed to that term. Gloria confirmed in writing that she understood and agreed to the agreement and that she willingly signed it without duress . . . .
>
> Now Gloria claims that I threatened to turn her over to the immigration system and that is the only reason why she signed the contract and the spousal consent. That is a blatant lie. I never, ever had any such conversation with Gloria. I had no reason to do so, and I would never be so disrespectful to my father or his wishes.

Id. at 464-65.

Gloria opposed Vanessa's appeal. Id. at 519-54. The EBAC construed that opposition as Gloria's own appeal. Id. at 561.

The EBAC received a memorandum from its attorneys, the Groom Law Group, on October 12, 2016. Id. at 12-20. On November 11, 2016, the EBAC issued its final decision. ECF No. 55-4 at 2-9. The EBAC concluded that: "Gloria Nunez has not provided sufficient extrinsic evidence that she did not (1) understand what she was consenting to when she executed the Pacific Gas and Electric Company Retirement Plan Pre-Retirement Beneficiary Designation Form . . .; and (2) voluntarily execute[] the September Designation." Id. at 5. The decision discussed the record, including Gloria's April 18, 2016 declaration and Vanessa's July 26, 2016 declaration, and concluded that Gloria voluntarily executed the September 19, 2015 designation:

> Further, the Trust . . . provided to the Plan as part of Gloria Nunez's appeal appears to have been restated as of August 28, 2015, which is around the same time that the PG&E Pre-Retirement Designation Forms were being executed by Mr. Nunez and Gloria Nunez. The Trust leaves all of Mr. Nunez's assets to his children (including Adriana Nunez), and not to Gloria Nunez. Although the Trust document does not determine who should be the beneficiary of Mr. Nunez's Plan death benefits, it is instructive as to what was being considered and possibly discussed by Mr. Nunez and Gloria Nunez at the time she was executing the consent section of the three different PG&E Pre-Retirement Beneficiary Designation Forms.
>
> As part of its review, the EBAC considered the PG&E Pre-Retirement Beneficiary Designation Forms executed by Gloria Nunez, the Spanish Statement executed by Gloria Nunez, the Agreement executed by Gloria Nunez, the Trust, and the statements provided by Gloria Nunez and Adriana Nunez. The only evidence that supports the assertion that Gloria Nunez did not voluntarily execute the September Designation is her own statements. The balance of the evidence, however, indicates that she voluntarily executed the September Designation. Therefore, the EBAC has determined that Gloria Nunez voluntarily executed the September Designation and is not entitled to receive the portion of Mr. Nunez's monthly death benefits that remains after the Plan complied with the QDRO submitted by Ada Nunez.

Id. at 9.[3]

## III. CONCLUSIONS OF LAW

"[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo

---

[3] The Plan determined that Ada Nuñez, Daniel's former wife, submitted a QDRO, or qualified domestic relations order, that entitled Ada to receive a portion of Daniel's Plan benefit. ECF No. 272-2 at 394.

standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). "That means the default is that the administrator has no discretion, and the administrator has to show that the plan gives it discretionary authority in order to get any judicial deference to its decision." Kearney v. Standard Ins. Co., 175 F.3d 1084, 1089 (9th Cir. 1999) (en banc). Such discretionary authority must be "unambiguously retained" by the plan administrator. Id. at 1090 (internal quotation marks and citation omitted).

Vanessa contends that another court in this district already decided that the Plan contains an unambiguous grant of discretionary authority. See Sizemore v. Pac. Gas & Elec. Ret. Plan, 952 F. Supp. 2d 894, 896 (N.D. Cal. 2013) (noting that the PG&E Retirement Plan grants "discretionary authority upon the plan administrator to determine eligibility for benefits under the plan"). It is not clear whether the Sizemore court was construing the same plan provisions at issue here. Moreover, the decision cited by Vanessa did not decide the standard of review and instead allowed limited discovery concerning a potential conflict of interest and procedural irregularity – neither of which is at issue in this case. Id. at 898-901. This Court therefore does not rely on Sizemore.

Nonetheless, the Court determines that abuse of discretion is the appropriate standard of review. Section 17 of the Plan provides that:

> Except as provided in Section 20, the appropriate committees established by the COMPANY shall serve as the final review committees, under the PLAN, to determine conclusively for all parties any and all questions arising from the administration of the PLAN and shall have sole and complete discretionary authority and control to manage the operation and administration of the PLAN, including, but not limited to, the determination of all questions relating to eligibility for participation and benefits, interpretation of all PLAN provisions, determination of the amount and kind of benefits payable to any PARTICIPANT, SPOUSE or BENEFICIARY, and construction of disputed or doubtful terms. Such decisions shall be conclusive and binding on all parties and not subject to further review.

ECF No. 27-1 at 103.[4] Gloria argues that this paragraph must be read in context with language

---

[4] The exception in Section 20 does not apply here. It allows Plan participants who belong to a bargaining unit to use the grievance or adjustment procedures of their respective collective bargaining agreement "to resolve any dispute concerning any question of SERVICE, status or

8

that the Company "reserves to itself the exclusive power to amend, suspend, or terminate the PLAN," and that "[a]ll powers and duties not reserved to the COMPANY are delegated to the EMPLOYEE BENEFIT COMMITTEE and to the EMPLOYEE BENEFIT APPEALS COMMITTEE." Id. But doing so does not aid Gloria's position. The Company did not reserve the power "to determine eligibility for benefits or to construe the terms of the plan." Firestone, 489 U.S. at 115. To the contrary, "sole and complete discretionary authority" to do both was explicitly vested in the Employee Benefit Committee and EBAC. The Ninth Circuit has:

> repeatedly held that similar plan wording – granting the power to interpret plan terms and to make final benefits determinations – confers discretion on the plan administrator. See, e.g., Bergt v. Ret. Plan for Pilots Employed by MarkAir, Inc., 293 F.3d 1139, 1142 (9th Cir.2002) (holding that a plan conferred discretion because its terms granted the administrator the "power" and "duty" to "interpret the plan and to resolve ambiguities, inconsistencies and omissions" and to "decide on questions concerning the plan and the eligibility of any Employee" (internal quotation marks omitted)); Grosz–Salomon v. Paul Revere Life Ins. Co., 237 F.3d 1154, 1159 (9th Cir.2001) (holding that a plan providing that the administrator "has the full, final, conclusive and binding power to construe and interpret the policy under the plan . . . [and] to make claims determinations" grants discretion (internal quotation marks omitted)).

Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 963-64 (9th Cir. 2006); see also McDaniel v. Chevron Corp., 203 F.3d 1099, 1107 (9th Cir. 2000) (applying abuse of discretion standard where "the Plan Administrator has the 'sole discretion to interpret the terms of the Plan' and that those interpretations 'shall be conclusive and binding'").

Under the abuse of discretion standard, "a plan administrator's decision 'will not be disturbed if reasonable.' This reasonableness standard requires deference to the administrator's benefits decision unless it is '(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record.'" Stephan v. Unum Life Ins. Co. of Am., 697 F.3d 917, 929 (9th Cir. 2012) (citations omitted) (quoting Conkright v. Frommert, 559 U.S. 506, 521 (2010) (internal quotation marks omitted); Salomaa v. Honda Long Term Disability Plan, 642 F.3d 666, 676 (9th Cir. 2011) (internal quotation marks omitted)). "Reasonableness does not

---

membership under the PLAN." ECF No. 27-1 at 105.

mean that [the district court] would make the same decision." Salomaa, 642 F.3d at 675. Instead, where, as here, there are no issues concerning a conflict of interest, "the plan administrator's decision can be upheld if it is grounded on *any* reasonable basis." Montour v. Hartford Life & Acc. Ins. Co., 588 F.3d 623, 629 (9th Cir. 2009) (citation and internal quotation marks omitted) (emphasis in original).

Gloria does not challenge the EBAC's determination that "she understood what she was consenting to when she executed the September Designation." ECF No. 55-4 at 8; see ECF No. 34 at 5 (Gloria's answer to the interpleader complaint, asserting in her first affirmative defense that "Gloria understood what the [September 19, 2015] papers were for"). She challenges only the EBAC's conclusion that she "voluntarily executed the September Designation." ECF No. 55-4 at 9. On that question, the EBAC weighed competing evidence, including Gloria's declaration that Vanessa blackmailed her into signing the September 2015 designation form and Vanessa's declaration denying Gloria's allegations. Id. at 8. The EBAC also considered the Trust documents as an indication of what Gloria and Daniel might have discussed concerning Daniel's estate planning. Id. at 9.

Gloria argues that no reasonable person would have agreed to give up half of Daniel's survivor benefits, or to have Vanessa rather than Gloria be named the beneficiary in charge of distributing such benefits. But it is not implausible that Gloria might have done so; she might, for example, have believed those were her dying husband's wishes. Gloria also argues that the EBAC improperly required her to prove by clear and convincing evidence that she did not voluntarily sign the September designation form, but she points to nothing in the Plan documents that requires a different standard of review. Nor does she cite any authority for the proposition that the EBAC's "sole and complete discretionary authority and control to manage the operation and administration of the PLAN, including, but not limited to, the determination of all questions relating to eligibility for participation and benefits," ECF No. 27-1 at 103, does not grant it the discretion to determine how to weigh competing evidence in the record. In addition, although the EBAC's decision refers to a clear and convincing evidence standard required to prove forgery of a notarized signature, its conclusion does not refer to that or any other evidentiary standard; instead,

10

it states only that the EBAC considered all of the evidence and concluded that "[t]he balance of the evidence" was contrary to Gloria's own statements that she did not voluntary execute the September designation form. ECF No. 55-4 at 6-7, 9. The Court cannot conclude on this record that EBAC's determination lacks any reasonable basis. Consequently, it will not disturb the EBAC's denial of benefits to Gloria.

Vanessa's motion also includes a section asserting that she "Is Entitled To Her Attorneys Fees," ECF No. 55 at 9-10, but she acknowledges on reply that she "has not asked the Court to make an award of fees at this time," ECF No. 62 at 8. She further notes that she "has not asked the Court even to determine that she is entitled to fees." Id. The Court therefore makes no determination as to whether Vanessa is entitled to fees but will not foreclose Vanessa from making a separate request. The parties shall meet and confer in an effort to resolve Vanessa's potential request for attorneys' fees. If they are unable to reach agreement, Vanessa may file a noticed motion requesting fees within twenty-one days of the date of this order.

**CONCLUSION**

Gloria Nuñez's motion for judgment is denied, and Adriana Vanessa Nuñez's motion is granted. The trial and pretrial conference dates are vacated.

Vanessa shall file a proposed judgment within seven days of the date of this order and shall indicate whether Gloria agrees to the proposed judgment as to form. If Gloria disagrees as to the form of judgment, she may submit a competing proposal within four days of Vanessa's submission.

**IT IS SO ORDERED.**

Dated: February 12, 2018

_____
JON S. TIGAR
United States District Judge

11